Robert L. **WILLIAMSON**, Plaintiff,

v.

**CONSOLIDATED RAIL CORPORATION,**
Defendant.

Civ. A. No. 88–1641.

United States District Court,
M.D. Pennsylvania.

May 2, 1990.

See also, 712 F.Supp. 48.

Neil J. Rovner, Angino & Rovner, Harrisburg, Pa., for plaintiff.

David C. Eaton, Nauman, Smith, Shissler and Hall, Harrisburg, Pa., for defendant.

## MEMORANDUM

CALDWELL, District Judge.

Defendant, Consolidated Rail Corporation (Conrail), has filed a motion for judgment notwithstanding the verdict and for a new trial. Plaintiff, Robert L. Williamson, brought this action under the Federal Employer's Liability Act (FELA), *see* 45 U.S.C. § 51, to recover for injuries suffered while he was transferring cargo from a damaged trailer to another one at a train yard operated by his employer, Pennsylvania Truck Lines (PTL). The case was tried to a jury. They returned a verdict in plaintiff's favor in the amount of $675,000 which was molded to $607,500 after taking into account

their determination that plaintiff was ten per cent responsible for his injury.

Defendant contends that we have no jurisdiction over the action because plaintiff was not its employee. FELA provides a cause of action against a railroad for "any person suffering injury while he is employed by such carrier...." 45 U.S.C. § 51. Thus, if there is no employment relationship, there is no jurisdiction over the case. For FELA purposes "the question of employment, or master-servant status, [is] ... determined by common-law principles." *Kelley v. Southern Pacific Co.*, 419 U.S. 318, 323, 95 S.Ct. 472, 476, 42 L.Ed.2d 498, 505 (1974) (brackets added). Under the common law, one method of establishing an employment relationship is by showing that the servant or employee was "acting for two masters simultaneously." *Id.* at 324, 95 S.Ct. at 476, 42 L.Ed.2d at 506. A servant is "a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." *Id.*, 95 S.Ct. at 476, 42 L.Ed.2d at 506 (quoting Restatement (Second) of Agency § 220(1)).

■ To show that plaintiff was not its employee Conrail discusses at great length the nature of his relationship with PTL. Conrail points out that Williamson was employed by PTL, received his paychecks from that company, and was subject to its supervision. Conrail treats these facts, admittedly of general relevance to the employment issue, as also relevant to the narrower issue of FELA employment. We disagree. The Court in *Kelley* focused upon control or the right to control at the time of the accident as the crucial inquiry. Thus, the Court stated that findings such as a lengthy tenure of employment with another company, work that was unskilled and payment on an hourly basis, while "generally relevant to the employment inquiry" were of no assistance in determining the railroad's control or right of control over the plaintiff in that action. *Id.* at 327 n. 9, 95 S.Ct. at 478 n. 9, 42 L.Ed.2d at 508

n. 9. The Fifth Circuit put the relevant inquiry as follows:

> [U]nder the FELA a worker can be the "employee" of a railroad even though carried on the employment rolls of another company and paid by that other company. The test of employment ... is whether the railroad has control of the employee or the right to control the employee. The law does not require that the railroad have full supervisory control. It requires only that the railroad, through its employees, plays "a significant supervisory role" as to the work of the injured employee.

*Lindsey v. Louisville & Nashville Railroad Co.*, 775 F.2d 1322, 1324 (5th Cir.1985) (citing *Kelley*) (brackets added).

Nevertheless, while disagreeing with defendant over the applicable legal principles, we do agree with its position. While the issue is close, we conclude that we cannot assert jurisdiction over this FELA case. The record shows that at the time of the accident plaintiff was performing a not uncommon task in his capacity as an employee of PTL and was not at that time employed by Conrail.

PTL, a wholly owned subsidiary of Conrail, operates the Harrisburg Intermodal Terminal in the Lucknow area near Harrisburg, Pennsylvania, as an independent contractor for the defendant. Trailers, normally operated over the road as part of a tractor-trailer combination, arrive on Conrail railroad cars at the Terminal. Part of PTL's job, and one of Williamson's duties, was to unload the trailers from the railroad cars and notify the trucking companies responsible for transporting the goods from that point. On the date of the accident, October 23, 1986, plaintiff's particular job assignment was to use a forklift to transfer goods from a damaged trailer to an undamaged one. Plaintiff was injured when the damaged trailer's dolly legs collapsed and the front end of the trailer went to the ground. Plaintiff was seated on a forklift at the rear of the trailer, but was still shaken when the front of the trailer collapsed.

 The strongest evidence in plaintiff's favor arises from the presence of a Conrail damage inspector during the transfer of the goods. Conrail was responsible for the contents of the damaged trailer and was making a record of any damages. Accordingly, plaintiff testified that as he moved the pallets from the one trailer to the other, the inspector would examine them for possible damage. Plaintiff further testified that he would do whatever the inspector told him to do in regard to any particular load.[1] (N.T. 16). This evidence was buttressed by David R. Estes, the inspector, who testified that if he saw plaintiff doing something that might damage the cargo during the transfer process, he would mention it to him so Williamson would correct it the next time. Estes also told plaintiff the pallets should be transferred to the new trailer in an alternating fashion, one pallet in one side and the next beside it rather than running them down one side of the new trailer and then the other. Additionally, Estes had the authority to stop plaintiff from transferring a pallet if he saw it was damaged so a record could be made and to order the way in which pallets were transferred so that certain ones were placed at the rear of the trailer. (N.T. 144–45). The PTL terminal manager, James Ryan, concurred generally with this last statement of authority. (N.T. 109).

It is true that the foregoing supports the conclusion that there was some right of direction on the part of the inspector. But it was of a limited nature and for the sole purpose of fulfilling the inspector's job to assess damage to the cargo. None of it was of a general supervisory nature going to the manner in which plaintiff performed his job. This case involves mere accommodation or coordination by two companies with a close working relationship, *see Kel-*

---

**1.** Conrail contends that plaintiff did not have the qualifications to render this opinion. We believe, however, that plaintiff's understanding of the relationship is relevant to the determination of the master-servant issue. *See Bradsher v. Missouri Pacific Railroad,* 679 F.2d 1253 (8th Cir.1982).

*ley, supra,* and we lack jurisdiction over it under FELA.

■ Even if we were to find jurisdiction, we would have to grant a new trial because we agree with defendant that the verdict was against the great weight of the evidence. *See Roebuck v. Drexel University,* 852 F.2d 715 (3d Cir.1988). Defendant argues that plaintiff could not have suffered a very great impact from the collapse of the trailer legs and that a pre-existing injury is the main cause of his disability and pain. A review of the deposition testimony of plaintiff's treating physician, Dr. Eduardo S. Violago, submitted by agreement at trial, is itself sufficient to establish that a new trial would be warranted.

Plaintiff suffered an injury at work in April of 1983 and came under Dr. Violago's care in April of 1985 after having been treated by another physician. (Dr. Violago deposition at p. 31).[2] Dr. Violago has been plaintiff's treating physician since and it is fair to say that treatment has been for a chronic condition Dr. Violago described as severe pain of the upper thoracic region at the T-3 and T-4 level, which he also characterized as a tender T-3—T-4 spine. (D.T. 8). Plaintiff also had surgery in April of 1986 for thoracic outlet syndrome on the left side. Before the October 1986 accident, plaintiff's employment history was checkered by long absences caused by his back condition. (defendant's Exhibit 16). By September 29, 1986, about a month before the accident which is the subject of this lawsuit, he was cleared once again to return to work. Nevertheless, after a visit on October 15, 1986, some eight days before the accident, Dr. Violago noted that plaintiff had a recurrence or exacerbation of severe pain in the T-3—T-4 area, and that it was a persistent, perplexing problem. The doctor prescribed Tylenol No. 4 for pain, a strong narcotic. (D.T. 63–64).

Following the accident, Dr. Violago did find that, in addition to the T-3—T-4 area, plaintiff began to suffer from severe pain in the neck and the upper trapezius area, (D.T. 10, 65), but by July of 1987, plaintiff's complaints were the same as those prior to the accident although they could vary in intensity. (D.T. 69). The doctor's notes for December of 1987 and February of 1988 are consistent with this conclusion. They both talk about tenderness in the T-3—T-4 area although the last note reports the beginning of thoracic outlet syndrome on the right side. (D.T. 70–71). Dr. Violago traced this to the 1986 accident but only because it did not occur prior to the accident. Earlier in the deposition, the doctor had noted another cause for this syndrome, a bad posture adopted in an attempt to relieve the chronic pain plaintiff was feeling before the 1986 accident. (D.T. 21). While there is evidence in Dr. Violago's deposition to support the plaintiff's position, we think that these examples, coupled with the testimony of Dr. Robert C. Steinman, show that the great weight of the evidence would support the grant of a new trial.[3]

We will issue an appropriate order.

## ORDER

AND NOW, this 2nd day of May, 1990, upon consideration of defendant's motion for judgment notwithstanding the verdict or for a new trial, it is ordered that:

1. The motion is granted.

2. This action is hereby dismissed for lack of jurisdiction.

---

**2.** Hereinafter references to Dr. Violago's testimony will be as "D. T."

**3.** Because of our disposition of this issue we need not address defendant's argument that there was insufficient evidence on causation or that the verdict was excessive. We do note, however, that we disagree with defendant's argument that Restatement (Second) of Torts § 388 should have applied rather than section 392.